1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   MATTHEW THOMASSON,                    )   Case No.: 1:20-cv-01172-BAK (SKO)
                                           )
12              Plaintiff,                 )   ORDER GRANTING IN PART DEFENDANT'S
                                           )   MOTION FOR SUMMARY JUDGMENT
13         v.                              )
                                           )   (Doc. 16)
14   SENTINEL TRANSPORTATION, LLC,         )
                                           )
15              Defendant.                 )
                                           )
16   _____       )

17         Sentinel Transportation, LLC terminated Matthew Thomasson for allegedly lying to his

18   supervisor.  Defendant argues that Plaintiff is unable to succeed upon his claims and seeks summary

19   judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. 16.)  Having considered

20   the parties' briefing, and for the reasons set forth below, the motion is **GRANTED IN PART**.

21   **I.      Background and Undisputed Material Facts[1]**

22         Sentinel hired Plaintiff as a driver in May 2018.  (Thomasson Depo. at 37:11-13, 39:13-15.)

23   Approximately one year later, Plaintiff was promoted to a dispatcher position.  (*Id*. at 40:3-6, 40:24-

24   41:1.)  As a dispatcher, Plaintiff needed to have fast mental skills, be alert and attentive, pay constant

25   _____

26   [1] This section is a summary of both the undisputed facts and the parties' contentions in the matter. The parties submitted a
     "Joint Statement of Undisputed Facts," which are identified as "UF." (Doc. 16-8.) The parties also each prepared separate
27   statements of facts to support their respective positions. Facts prepared by Defendant that were either admitted by Plaintiff
     or not disputed by the evidence cited are identified as "DSF" for Defendant's Separate Fact. (Doc. 16-2.) Likewise, facts
28   prepared by Plaintiff that were either admitted or not disputed by the evidence cited by Defendant are identified as "PSF"
     for Plaintiff's Separate Facts. (Doc. 19.)

                                                   1

attention to drivers, monitor drivers, send drivers to different directions if needed, and if there are changes in routes, make sure last-minute changes are given to the drivers before they start driving in the wrong direction.  (PSF 24; Thomasson Decl. ¶ 11.)  Plaintiff's position with Sentinel was an office job which did not include driving.  (PSF 38; Franklin Depo. at 90:16-19.)  Defendant did not pay its dispatchers on their scheduled days off.  (PSF 36; Franklin Depo. at 46:21-47:19; Salters Depo. at 36:21-37:8.)

In July 2018, Plaintiff was diagnosed with an anxiety disorder and requested a leave of absence. (UF 1; UF 2; Thomasson Depo. at 59:3-8, 60:15-17, 60:24-61:8, 67:19-68:2.)  Plaintiff did not disclose to Sentinel that he had been diagnosed with an anxiety disorder.  (UF 3.)  Sentinel nevertheless granted Plaintiff's request for a leave of absence.  (UF 4; Doc. 16-6 at 84, Exhibit K.)  Plaintiff did not qualify for protected leave under the California Family Rights Act (CFRA) because he had not yet been employed for 12 months as required by the statute (Thomasson Depo. at 67:4-6, 70:2-7; Doc. 16-6 at 82, Exhibit J), and Plaintiff understood that the leave of absence did not qualify under CFRA because he had not been working for Sentinel long enough (UF 5).

Plaintiff was cleared to return to work on September 25, 2018.  (UF 6; Thomasson Depo. at 69:4-9.)  Regarding this leave, Plaintiff testified he did not have any complaints with how Sentinel handled that leave of absence, (UF 7; Thomasson Depo. at 67:10-12), or about how Sentinel treated him when he came back from the leave of absence (UF 8; Thomasson Depo. at 67:13-15).  Plaintiff also testified that no one from Sentinel discouraged Plaintiff from taking a leave of absence, (UF 9; Thomasson Depo. at 70:16-18), and no one from Sentinel ever made any negative comments about Plaintiff taking the leave of absence (UF 10; Thomasson Depo. at 70:19-21).

On April 2, 2020, Plaintiff was concerned that he may have been exposed to COVID-19.  (UF 11; Thomasson Depo. at 72:7-9.)  Plaintiff ultimately tested negative for COVID-19 (UF 12; Thomasson Depo. at 73: 16-17), and after being tested, Plaintiff worked from home (UF 13; Thomasson Depo. at 73:18-20).  Plaintiff testified that he was able to effectively do his job working from home (UF 14; Thomasson Depo. at 74:11-12; 75:5-7) and that he had no complaints about Sentinel requiring him to work from home after he reported a possible exposure to COVID-19 (UF 15; Thomasson Depo. at 80:8-11).  Plaintiff further testified that no one from Sentinel treated Plaintiff differently when he came back

1   to work (DSF 16; Thomasson Depo. at 80:19-21), and no one retaliated against him for taking time away
2   from work (DSF 17; Thomasson Depo. at 80:22-24).

3          On June 9, 2020, Plaintiff left work early and again told his supervisor he believed he may have
4   contracted COVID-19.  (DSF 18; Thomasson Depo. at 151:2-16.)  On that day, Plaintiff complained to
5   his physician that he was having the symptoms of nausea, dry heaves, diarrhea, headache, and fatigue
6   for the previous 5 days.  (PSF 1; Decl. of Thomasson ¶¶ 5-6, 8; Plaintiff's Exhibit 337.)  Plaintiff's
7   doctor subsequently placed him off work from June 9, 2020 to June 13, 2020. (DSF 19; PSF 2;
8   Thomasson Depo. at 150:11-151:9; June 9th Doctor's Note attached as Exhibit C to Habashi Decl. ¶ 4;
9   Thomasson Decl. ¶¶ 5-6, 8; Plaintiff's Exhibit 337.)  On or about June 9, 2020, Plaintiff informed his
10  manager, Cindy Salters, of the medical consultation he had on June 9, 2020, and texted the doctor's note
11  to her.  (PSF 3; Thomasson Decl. ¶ 8; Thomasson Depo. 150:11-151:1; Plaintiff's Exhibit 43.)

12         Plaintiff had a video visit with his physician on June 12, 2020; Plaintiff had a cough this day,
13  and his physician told him that he had an upper respiratory infection.  (PSF 4; Thomasson Decl. ¶¶ 7, 9;
14  Plaintiff's Exhibit 386.)  Plaintiff's physician also informed him that he was negative for COVID-19,
15  but pneumonia or Valley Fever could not be ruled out.  (PSF 5; Thomasson Decl. ¶¶ 7, 9; Plaintiff's
16  Exhibit 386.)  On the same day, Plaintiff texted Ms. Salters that his COVID-19 test had come back
17  negative, but that he still "felt like death."  (DSP 20; PSF 7; Thomasson Depo. at 98:19-99:7, 160:23-
18  161:12, June 12th Text Message attached as Exhibit D to Habashy Decl. ¶ 5; Doc. 21-2 at 2, Plaintiff's
19  Exhibit 22.)

20         Also on June 12, 2020, Ms. Salters asked Plaintiff by text if he was still able to work from home
21  the upcoming Sunday (June 14, 2020).  (DSF 21; PSF 8; Thomasson Depo. at 161:8-12; Exhibit D to
22  Habashy Decl. ¶ 5; Plaintiff's Exhibit 22.)  Plaintiff replied to Ms. Salters' text on June 13, 2020, at
23  11:16 am and told her that he had tried to send her a doctor's note the night before that had not gone
24  through, which placed him off work on June 14, 2020 to June 15, 2020.  (DSF 23; PSF 16; Thomasson
25  Depo. at 99:22-100:15; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Thomasson
26  Decl. ¶¶ 7, 9; Doc. 22-3, Plaintiff's Exhibit 386; Doc. 21-3 at 2, Plaintiff's Exhibit 23.)  In that same
27  reply, Plaintiff also texted that "I can barely walk."  (DSF 24; PSF 15, 22; Thomasson Depo. at 99:22-
28  100:15; 100:23-101:4, 111:18-112:3; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶

7; Plaintiff's Exhibit 23.)  Plaintiff testified that the symptoms he was feeling at the time were nausea, vomiting, and light headedness.  (PSF 18; Thomasson Depo. at 119:2-6.)

June 13, 2020 was Plaintiff's scheduled day off (PSF 17; Thomasson Decl. ¶ 10) and that morning at about 3:00 a.m., Plaintiff thought he could drive his brother to the Nevada state line, drop him off, rest a bit, and drive himself back to Bakersfield (PSF 19; Thomasson Decl. ¶ 10).  On June 13, 2020, Plaintiff did in fact leave Bakersfield at about 3:30 a.m., he reached the Nevada border at about 7:00-8:00 a.m., took a break for about an hour and started his journey back to Bakersfield.  (PSF 20; Thomasson Decl. ¶ 10.)  On his way back to Bakersfield, Plaintiff felt like he could hardly walk and realized he got into something he shouldn't have because as the day passed, Plaintiff got progressively ill, felt very tired, and did not feel he could work from home the next day (on June 14, 2020).  (PSF 21, 24; Thomasson Decl. ¶¶ 10-11.)  Plaintiff admits that when he sent the text message to Ms. Salters stating that he could "barely walk" he was, in fact, driving back to Bakersfield, California from Pahrump, Nevada.  (DSF 25; Thomasson Depo. at 111:5-17.)  The driving distance from Bakersfield to Pahrump is approximately 275 miles.  (DSF 22; Exhibit I to Habashy Decl. ¶ 10.)  A video posted to Facebook shows that on June 13, 2020, at 6:05 a.m., Plaintiff was driving his brother and a friend from Bakersfield to Pahrump.  (DSF 22; Thomasson Depo. at 101:5-21, 102:13-15, 104:16-19, 111:5-17, June 13th Facebook Video reference as Exhibit L in Franklin Decl. ¶ 4.)

On June 15, 2020, Plaintiff had a telephonic doctor visit and asked his doctor to excuse him from work because he had diarrhea.  (DSF 26; Thomasson Depo. at 119:24-121:5; June 15, 2020 Doctor's Note attached as Exhibit E to Habashy Decl. ¶ 6.)  On the same day, Plaintiff texted Ms. Salters his physician's note placing him off work from June 16, 2021, to June 18, 2021.  (PSF 26; Thomasson Depo. at 153:21-154:5; Thomasson Decl. ¶ 12.)  Plaintiff's doctor also tested him for Valley Fever on June 18, 2020, which came back negative the next day.  (DSF 27-28; PSF 27-28; Thomasson Depo. at 152:13-19; Thomasson Decl. ¶¶ 13-15; Plaintiff's Exhibit 386.)  Plaintiff was instead diagnosed with gastroenteritis at that time.  (Thomasson Depo. at 153:2-4.).  Sometime in June 2020, Plaintiff's physician told him that continuing gastrointestinal problems could indicate that Plaintiff was pre-diabetic.  (PSF 29; Thomasson Decl. ¶ 15.)  On June 23, 2021, Plaintiff's physician told him that he had high glucose which would be monitored for diabetes.  (PSF 30; Thomasson Decl. ¶ 16.)

Regarding the video posted to Facebook, a former employee sent the video to Cindy Salters, which showed Plaintiff driving on the morning of June 13, 2020, while a passenger exposed his naked rear end out of the front passenger side window.  (Salters Depo. at 22:10-16, 23:8-9, 24:9-16.)  Ms. Salters subsequently sent the video to human resources.  (DSF 32; Salters Depo. at 25:24-26:9.)  Sometime between June 20, 2020 and June 22, 2020, Jamie Franklin, Sentinel's human resources manager, scheduled a meeting with Plaintiff and Ms. Salters to ask Plaintiff to provide some explanation for the video. (DSF 33, Thomasson Depo. at 168:23-169:8.)  During that meeting, Mr. Franklin showed Plaintiff the video posted on Facebook on June 13, 2020, at 6:05 a.m., and asked him to explain it.  (DSF 34, Thomasson Depo. at 169:11-19; Exhibit L in Franklin Decl. ¶ 4 and filed concurrently as a Notice of Lodging.)  Plaintiff confirmed that he was the person driving the car in the video and that he had driven from Bakersfield to Pahrump and back on June 13, 2020.  (DSF 35; PSF 32; Thomasson Depo. at 169:11-19, 170:15-23.)  At that meeting, Plaintiff was told he was going to be placed on suspension. (Thomasson Depo. at 169:11-19, 171:24-172:2.)

On June 24, 2020, Sentinel terminated Plaintiff's employment for his "admitted misconduct by providing false and misleading information to Sentinel in connection with [his] recent absence from work."  (Thomasson Depo. at 173:20-174:20; Plaintiff's Termination Letter attached as Exhibit G to Habashy Decl. ¶ 8; Doc. 16-4 at 2, Franklin Decl. ¶ 5.)  Mr. Franklin testified it was a group decision to terminate Plaintiff between himself, Tim Maguire (Vice President of Operations), Charles Millsap, Cindy Salters, and Marilyn Shaw (Vice President of Human Resources).  (PSF 49; Franklin Depo. at 95:7-12, 96:23-25.)  Plaintiff admitted that he understood that Sentinel was terminating him because they thought he was lying. (Thomasson Depo. at 174:21-23, 176:20-22.)  Plaintiff testified that he would have explained that he had to drive his brother so his brother could help his mother, it was his day off, and he did not go on vacation or to have fun.  (PSF 45; Thomasson Depo. at 175:6-13.)

The only person to whom Plaintiff complained during his employment with Sentinel was Stephanie Repp, one of his coworkers.  (DSF 41; Thomasson Depo. at 159:15-16, 159:25-160:1,185:5-185:24.)  Plaintiff's complaint to his co-worker, Ms. Repp, was about the way Ms. Salters had treated him and how he felt he was treated unfairly.  (DSF 42; Thomasson Depo. at 185:5-186:2.)  Plaintiff believed that Ms. Salters was rude to him.  (DSF 43; Thomasson Depo. pgs. 43:22-44:2.)  Plaintiff

1   testified that Ms. Salters denied his vacation request and told him, "[W]e didn't have coverage. If I

2   wanted to take one day off, I could take one day off, but I couldn't use my vacation as a whole." (DSF

3   44; Thomasson Depo. at 43:22-44:16, 52:5-10.)

4   **II.       Legal Standards for Summary Judgment**

5          The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order

6   to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,

7   475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no

8   genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

9   R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

10  judgment, when there is no genuine issue of material fact as to a particular claim or portion of that

11  claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981)

12  ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of

13  a single claim . . .") (internal quotation marks, citation omitted).  The standards that apply on a motion

14  for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56

15  (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

16         Summary judgment, or summary adjudication, should be entered "after adequate time for

17  discovery and upon motion, against a party who fails to make a showing sufficient to establish the

18  existence of an element essential to that party's case, and on which that party will bear the burden of

19  proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial

20  responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.,* 477 U.S. at 323.

21  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the

22  non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing

23  law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Wool v. Tandem Computers,*

24  *Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication of a claim is

25  appropriate by "informing the district court of the basis of its motion, and identifying those portions of

26  'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

27  if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477

28  U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## III.    Evidence before the Court

In evaluating a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings, deposition testimony, answers to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court has reviewed each of the evidentiary objections identified by the Defendant related to the opposition for summary judgment. (*See* Doc. 23-3.) Many of Defendant's objections to Plaintiff's evidence are based on lack of foundation or hearsay. These evidentiary objections are overruled for the

purposes of this motion.  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("When evidence is not presented in an admissible form in the context of a motion for summary judgment, but it may be presented in an admissible form at trial, a court may still consider that evidence." (citation omitted)); *see also City of Lincoln v. United States*, No. 2:16-CV-1164-KJM-AC, 2020 WL 5107613, at *5 (E.D. Cal. Aug. 31, 2020) (citing *Burch* and overruling objections based on lack of foundation for purposes of summary judgment motion); *Russell v. Walmart Inc.*, No. CV 19-5495-MWF (JCX), 2020 WL 5289889, at *4 (C.D. Cal. Aug. 17, 2020) (citing *Burch* and overruling "garden variety evidentiary objections" based on lack of foundation, lack of proper authentication and hearsay; noting that while such objections may be cognizable at trial, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant facts at trial, and not the form of the facts as presented in the motion for summary judgment).  Defendant's remaining objections that the statements are vague are objections to Plaintiff's characterization of the evidence rather than to the evidence itself.  Thus, the Court will not consider these objections. *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008) (noting that the parties' " 'evidentiary objections to [their adversary's] separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements"); *see also Communities Actively Living Indep. & Free v. City of Los Angeles*, 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011) (summarily overruling boilerplate evidentiary objections when the grounds for the objections were unduly vague and overbroad).

Defendant further objects to the evidence on the grounds of relevance.  The Court notes that it must determine whether a fact is relevant and material as part of "the summary judgment standard itself," *Burch*, 433 F.Supp. 2d at 1119, and any evidence deemed irrelevant was omitted from the Court's summary of the facts and contentions.  Further, the Court, as a matter of course, has not factored into its analysis any statements identified by either party that are speculative or represent a legal conclusion. *See Burch*, 433 F. Supp. 2d at 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment") (citation omitted, emphasis in original).  Thus, the Court has relied upon only

admissible evidence.  In addition, the Court will consider only those facts that are supported by admissible evidence and to which there is no genuine dispute.

**IV.     Discussion and Analysis**

     **A.     Plaintiff's First Cause of Action for Violation of CFRA**

Plaintiff's first cause of action is brought pursuant to the California Family Rights Act (CFRA) and Cal Gov't Code § 12945.2.  According to Plaintiff, he was terminated in retaliation for taking leave under CFRA.  (Doc. 1, Complaint at ¶¶ 24-25.)

     1.     Retaliation

The CFRA is contained within the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), which is intended to give employees an opportunity to leave work for certain medical reasons without jeopardizing job security.  *Neisendorf v. Levi Strauss & Co.*, 143 Cal.App.4th 509, 516 (2006).  The CFRA closely parallels its federal counterpart, the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.), which also provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" due, among other things, to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." (29 U.S.C. § 2612(a)(1)(D).)

Violations of the CFRA generally fall into two types of claims: (1) "interference" claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) "retaliation" claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave.  *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 763 (5th Cir.2001); *Dudley v. Department of Transportation*, 90 Cal.App.4th 255, 260-261 (2001).

The CFRA provides that "[i]t shall be an unlawful employment practice for an employer to . . . discharge . . . or discriminate against, any individual because of. . . . [¶] (1) An individual's exercise of the right to family care and medical leave provided by" the CFRA.  Gov. Code, § 12945.2, subd. (k).  A plaintiff can establish a prima facie case of retaliation in violation of the CFRA by showing the following: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse

employment action because he or she exercised the right to take CFRA leave.  *Dudley v. Department of Transportation, supra,* 90 Cal.App.4th 255, 261 (2001).

For CFRA to apply, an employee must have "more than 12 months of service with the employer, and . . . at least 1,250 hours of service with the employer during the previous 12-month period."  Cal. Gov't Code § 12945.2(a).  The employee must also have a right to leave under a "qualifying CFRA purpose," which in this case means the employee must suffer from a "serious health condition that makes [him] unable to perform the functions of the position."  *Id*. §  12945.2(c)(3)(C).  "Serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves either of the following: (A) Inpatient care in a hospital, hospice, or residential health care facility. (B) Continuing treatment or continuing supervision by a health care provider."  *Id.* § 12945.2(c)(8)(A)–(B).  In other words, "for an employee to be entitled to a medical leave for h[is] own serious health condition, the condition must cause h[im] to be unable to work at all or unable to perform one or more of the essential functions of h[is] position."  *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1254 (2008), *as modified on denial of reh'g*.

California's Fair Employment and Housing Act (FEHA) affords state employees protection against discrimination and retaliation on any of a wide range of impermissible bases.  *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 105 (2008).  Due to the similarity between federal and state employment discrimination laws, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (emphasis in original) (noting California courts' reliance on the federal burden shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Likewise, the shifting burden test applies to claims of retaliation under the Fair Employment and Housing Act.  *See Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).

In general, the plaintiff bears the burden to establish a prima facie case of a violation of the Fair Employment and Housing Act.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  "The burden of establishing a prima facie case . . . is not onerous," and the evidence may be either direct or circumstantial.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also DeJung v.*

*Superior* Court, 169 Cal. App. 4th 533, 549 (2008) (noting evidence may be direct or circumstantial).  If plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (explaining the burden as it related to a claim for discrimination under federal law); *see also McDonnell Douglas Corp*, 411 U.S. at 803.  If the defendant carries this burden, the inquiry does not end.  The burden instead shifts back to the plaintiff to demonstrate the reasons proffered by defendant are pretextual.  *McDonnell Douglas Corp.*, 411 U.S. at 805.  Consequently, the plaintiff has "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him]." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142 (2000).

Notably, however, when an employer moves for summary judgment on a Fair Employment and Housing Act claim, "'the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden.'" *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 224 (1999)); *see also Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1730 (1994) ("A defendant seeking summary judgment must bear the initial burden of showing that the action has no merit, and the plaintiff will not be required to respond unless and until the defendant has borne that burden").

Plaintiff alleges that on June 9, 2020, he left work early with symptoms of nausea, dry heaves, diarrhea, headache, and fatigue (PSF 1; Decl. of Thomasson ¶¶ 5-6, 8; Plaintiff's Exhibit 337), and his doctor placed him off work from June 9, 2020, to June 13, 2020.  (DSF 19; PSF 2; Thomasson Depo. at 150:11-151:9; June 9th Doctor's Note attached as Exhibit C to Habashy Decl. ¶ 4; Thomasson Decl. ¶¶ 5-6, 8; Plaintiff's Exhibit 337).  On June 12, 2020, Ms. Salters asked Plaintiff by text if he was still able to work from home the upcoming Sunday, (June 14, 2020) (DSF 21; PSF 8; Thomasson Depo. at 161:8-12; Exhibit D to Habashy Decl. ¶ 5; Plaintiff's Exhibit 22), and Plaintiff replied to Ms. Salters' text on June 13, 2020, letting her know that he had tried to send her a doctor's note the night before that had not gone through, which placed him off work on June 14, 2020 to June 15, 2020.  (DSF 23; PSF 16; Thomasson Depo. at 99:22-100:15; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Thomasson Decl. ¶¶ 7, 9; Doc. 22-3, Plaintiff's Exhibit 386; Doc. 21-3 at 2, Plaintiff's Exhibit 23.)

In that same reply, Plaintiff also texted "I can barely walk."  (DSF 24; PSF 15, 22; Thomasson Depo. at 99:22-100:15; 100:23-101:4, 111:18-112:3; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Plaintiff's Exhibit 23.)  On that same day, Plaintiff's scheduled day off (PSF 17; Thomasson Decl. ¶ 10), Plaintiff thought he could drive his brother to the Nevada state line, drop him off, rest a bit, and drive himself back to Bakersfield (PSF 19; Thomasson Decl. ¶ 10), which he in fact did as confirmed by a video posted to Facebook (DSF 22; Thomasson Depo. at 101:5-21, 102:13-15, 104:16-19, 111:5-17, June 13th Facebook Video reference as Exhibit L in Franklin Decl. ¶ 4).  On his way back to Bakersfield, Plaintiff felt like he could hardly walk and realized he got into something he shouldn't have because as the day passed, Plaintiff got progressively ill, felt very tired, and did not feel he could work from home the next day (on June 14, 2020).  (PSF 21, 24; Thomasson Decl. ¶¶ 10-11.)  Plaintiff admits that when he sent the text message to Ms. Salters stating that he could "barely walk" he was, in fact, driving back to Bakersfield, California from Pahrump, Nevada (DSF 25; Thomasson Depo. at 111:5-17), which is a driving distance of approximately 275 miles (DSF 22; Exhibit I to Habashy Decl. ¶ 10).  On June 15, 2020, Plaintiff had a telephonic doctor visit and asked his doctor to excuse him from work because he had diarrhea.  (DSF 26; Thomasson Depo. at 119:24-121:5; June 15, 2020 Doctor's Note attached as Exhibit E to Habashy Decl. ¶ 6.)  Plaintiff was diagnosed with gastroenteritis (Thomasson Depo. at 153:2-4), and sometime in June 2020, Plaintiff's physician told him that continuing gastrointestinal problems could indicate that Plaintiff was pre-diabetic. (PSF 29; Thomasson Decl. ¶ 15).  On June 23, 2021, Plaintiff's physician told him that he had high glucose which would be monitored for diabetes. (PSF 30; Thomasson Decl. ¶ 16.)

Defendant fails to demonstrate the initial burden of showing that Plaintiff's CFRA retaliation claim has no merit.  Plaintiff's proffered evidence demonstrates that he exercised his right to take a qualifying leave.  Specifically, on June 12, 2020, Ms. Salters asked Plaintiff by text if he was still able to work from home on June 14, 2020 (DSF 21; PSF 8; Thomasson Depo. at 161:8-12; Exhibit D to Habashy Decl. ¶ 5; Plaintiff's Exhibit 22), and Plaintiff replied to Ms. Salters' text on June 13, 2020, to let her know he had tried to send her a doctor's note the night before that had not gone through, which placed him off work from June 14, 2020, to June 15, 2020.  (DSF 23; PSF 16; Thomasson Depo. at 99:22-100:15; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Thomasson Decl. ¶¶

7, 9; Doc. 22-3, Plaintiff's Exhibit 386; Doc. 21-3 at 2, Plaintiff's Exhibit 23).  In that same reply, Plaintiff also texted that "I can barely walk" (DSF 24; PSF 15, 22; Thomasson Depo. at 99:22-100:15; 100:23-101:4, 111:18-112:3; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Plaintiff's Exhibit 23), but a video posted to Facebook showed Plaintiff was in fact, at the time he texted Ms. Salters, driving his brother to the Nevada state line to drop him off and driving himself back to Bakersfield.  (DSF 22; Thomasson Depo. at 101:5-21, 102:13-15, 104:16-19, 111:5-17, June 13th Facebook Video reference as Exhibit L in Franklin Decl. ¶ 4.)  On his way back to Bakersfield, Plaintiff felt like he could hardly walk and realized he got into something he shouldn't have because as the day passed, Plaintiff got progressively ill, felt very tired, and did not feel he could work from home the next day (on June 14, 2020).  (PSF 21, 24; Thomasson Decl. ¶¶ 10-11.)  On June 24, 2020, Sentinel terminated Plaintiff's employment for his "admitted misconduct by providing false and misleading information to Sentinel in connection with [his] recent absence from work."  (Thomasson Depo. at 173:20-174:20; Plaintiff's Termination Letter attached as Exhibit G to Habashy Decl. ¶ 8; Doc. 16-4 at 2, Franklin Decl. ¶ 5.)  The misleading information on which Sentinel bases Plaintiff's termination is his statement regarding his ability to walk–while driving a distance of approximately 550 miles.  The Court finds that Plaintiff's evidence gives rise to a genuine issue of material fact as to whether the ability to "barely walk" while driving is misleading.

Defendant asserts that Plaintiff cannot establish a causal link between his termination and his brief leave of absence.  (Doc. 23 at 8.)  As set forth above, there is a distinction between a retaliation claim and an interference claim under the CFRA.  Similar to causes of action under FEHA, the *McDonnell Douglas* burden shifting analysis applies to retaliation claims under CFRA.  *Moore v. Regents of Univ. of California*, 248 Cal. App. 4th 216, 248 (2016).  The communication that led to Plaintiff's termination occurred on June 13, 2020, when Plaintiff replied to Ms. Salters' text inquiry about his availability to work, and Plaintiff texted that he could "barely walk."  (DSF 24; PSF 15, 22; Thomasson Depo. at 99:22-100:15; 100:23-101:4, 111:18-112:3; June 13th Text Message attached as Exhibit F to Habashy Decl. ¶ 7; Plaintiff's Exhibit 23.)  After Plaintiff's meeting with Mr. Franklin and Ms. Salters, Sentinel terminated Plaintiff's employment on June 24, 2020.  (Thomasson Depo. at 173:20-174:20; Plaintiff's Termination Letter attached as Exhibit G to Habashy Decl. ¶ 8; Doc. 16-4 at 2,

Franklin Decl. ¶ 5.)  Defendant contends that Plaintiff's exclusive reliance on the temporal proximity between his leave and his termination is insufficient as a matter of law to rebut Defendant's articulated reason for his termination, particularly where an intervening act (*i.e.*, lying to his supervisor) occurred. (Doc. 23 at 8.)

The evidence demonstrates that it was only about eleven days after Plaintiff's conduct at issue that Sentinel terminated his employment.  Given the short period of time between the communication at issue and the termination of employment, a causal link may be inferred between Plaintiff's protected activity and the adverse employment action.  *See, e.g.*, *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (inferring causation where adverse employment actions took place less than three months after the plaintiff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint); *cf. McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124-25 (9th Cir. 2004) ("Because the two events were separated by a year and a half, the timing alone does not establish a connection.")

### 2.   Defendant's legitimate, non-discriminatory reasons

On June 24, 2020, Sentinel terminated Plaintiff's employment for his "admitted misconduct by providing false and misleading information to Sentinel in connection with [his] recent absence from work." (Thomasson Depo. at 173:20-174:20; Plaintiff's Termination Letter attached as Exhibit G to Habashy Decl. ¶ 8; Doc. 16-4 at 2, Franklin Decl. ¶ 5.)  As Defendant asserts, Sentinel terminated Plaintiff's employment because he lied to his supervisor.  (Doc. 16-1 at 15-16.)  Plaintiff also admitted in his deposition that he understood that Sentinel was terminating him because they thought he was lying.  (Thomasson Depo. at 174:21-23, 176:20-22.)  Defendant contends that whether Plaintiff actually lied or not is not at issue, "[i]t is the employer's honest belief in the stated reason for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." (Doc. 23 at 6, citing *King v. United Parcel Service, Inc.*, 152 Cal. App. 4th 426, 436 (2007).)  Although there remains a question of fact as to whether Plaintiff's statement to his employer was misleading, Defendant has met the burden of production.

1      3.      Pretext

2      "Once an employer satisfies its initial burden of proving the legitimacy of its reason for

3  termination, the discharged employee seeking to avert summary judgment must present specific and

4  substantial responsive evidence that the employer's evidence was in fact insufficient or that there is a

5  triable issue of fact material to the employer's motive."  *King v. United Parcel Serv., Inc.*, 152 Cal. App.

6  4th 426, 433 (2007).  In other words, plaintiff must produce substantial responsive evidence to show

7  that Sentinel's motive was pretextual; that is, "that a discriminatory reason more likely motivated the

8  employer or that the employer's explanation is unworthy of credence."  *Id*.

9          Defendant contends that Plaintiff cannot show Sentinel's legitimate business reason for

10 terminating his employment was mere pretext, (Doc. 16-1 at 16), as Sentinel's stated reason for

11 terminating Plaintiff's employment was Plaintiff allegedly providing false and misleading information

12 to Sentinel (Thomasson Depo. at 173:20-174:20; Plaintiff's Termination Letter attached as Exhibit G to

13 Habashy Decl. ¶ 8; Doc. 16-4 at 2, Franklin Decl. ¶ 5).  Plaintiff asserts he was never provided the

14 opportunity to explain to Sentinel and his supervisors the reason for the long drive and his response to

15 Ms. Salters that he could "barely walk" when she inquired about his ability to work the next day.  (Doc.

16 18 at 16-17.)  Plaintiff was driving a distance of approximately 550 miles at the time when he sent the

17 text message response to Ms. Salters.  (DSF 25; Thomasson Depo. at 111:5-17;  DSF 22; Exhibit I to

18 Habashy Decl. ¶ 10.)  Plaintiff has adduced evidence that he was experiencing various symptoms and

19 had multiple visits with physicians around the relevant time period, which included tests for COVID-19

20 and Valley Fever ordered by his physician.  In June 2020, Plaintiff's physician also told him that

21 continuing gastrointestinal problems could indicate that Plaintiff was pre-diabetic (PSF 29; Thomasson

22 Decl. ¶ 15), and on June 23, 2021, Plaintiff's physician told him that he had high glucose which would

23 be monitored for diabetes (PSF 30; Thomasson Decl. ¶ 16). Plaintiff presents specific evidence

24 regarding his medical condition that was affecting his ability to work at and around the time in question.

25 Viewing the evidence in the light most favorable to Plaintiff, there is a question of fact as to whether

26 Plaintiff's text message to Sentinel about his ability to "barely walk" while he was driving a long

27 distance is misleading.  Accordingly, there is a triable issue of fact material to Sentinel's motive in

28

terminating his employment.  The Court denies the motion for summary judgment as to Plaintiff's first cause of action for violation of CFRA.

    4.    <u>Interference</u>

Plaintiff also appears to assert interference under CFRA, contending that Sentinel interfered with his ability to take CFRA leave by asking him if he would be able to work from home on June 14, 2020. (Doc. 18 at 7-11.)  Unlike a retaliation claim, "[a]n interference claim under CFRA does not invoke the burden shifting analysis."  *Moore v. Regents of the Univ. of California*, 248 Cal.App.4th 216, 206 (2016).  The elements of such a claim are (1) "the employee's entitlement to CFRA leave rights" and (2) "the employer's interference with or denial of those rights."  *Id.*

Plaintiff contends that by inquiring about his ability to work from home on June 14, 2020, Sentinel somehow intimidated or tried to discourage him from using CFRA leave.  (Doc. 18 at 7-11.) Defendant responds that simply asking someone if they are able to work from home, without more, cannot reasonably be interpreted as intimidation or discouragement.  (Doc. 23 at 7.)  Defendant also correctly asserts that at the time his supervisor asked that question, Plaintiff had not yet informed Sentinel that his doctor had placed him off work on June 14, 2020.  (*Id*. at 7.)  In fact, at the time his supervisor asked Plaintiff to work on June 14, 2020, Plaintiff's doctor had placed him off work only from June 9, 2020 to June 13, 2020.  (DSF 19; PSF 2; Thomasson Depo. at 150:11-151:9; June 9th Doctor's Note attached as Exhibit C to Habashy Decl. ¶ 4; Thomasson Decl. ¶¶ 5-6, 8; Plaintiff's Exhibit 337.)

While Ms. Salters was aware that Plaintiff was experiencing various symptoms that led to him being placed on leave, she was only aware of the leave through June 13, 2020 when she inquired about his ability to work on June 14, 2020 (the day after his leave was set to end), and was not yet informed about any continual health issues that Plaintiff may have been experiencing that would have led to his leave being extended.  Accordingly, Ms. Salters text inquiry to Plaintiff about his ability to work cannot reasonably be interpreted as interference with Plaintiff's rights under CFRA.  Plaintiff has not raised a triable issue of fact material to this issue.

**B.     Plaintiff's Second Cause of Action for Violation of Labor Code §§ 233 and 234**

Defendant moves for summary judgment on Plaintiff's second claim, which alleges that Defendant retaliated against Plaintiff by claiming that his absence from work was due to Plaintiff providing false and misleading information regarding his absence, and seeking to use sick leave in violation of California Labor Code sections 233 and 234.  (Doc. 1, Complaint at ¶¶ 34, 35.)  Section 233 prohibits employers from denying employees the use of accrued sick leave.  Cal. Labor Code § 233. Section 234 addresses sick leave to attend to an illness in the family.   Cal. Labor Code § 234.

As discussed above in relation to Plaintiff's first cause of action, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is a fact issue as to whether the ability to "barely walk" while driving is misleading.  Plaintiff has adduced relevant evidence to demonstrate that there is a genuine issue of a material fact related to this claim.  Accordingly, the Court denies the motion for summary judgment as to Plaintiff's second cause of action.

**C.     Plaintiff's Third Cause of Action for Violation of the Healthy Families Act of 2014**

The Healthy Workplaces, Healthy Families Act of 2014 (HWHF) is codified as California Labor Code sections 245 to 249.  It provides, in relevant part, that an employee who has worked for an employer for at least thirty days within a year of commencing employment is entitled to paid sick days to be accrued at a specified rate.  *See* Cal. Labor Code § 246.  Upon the oral or written request of an employee, an employer is required to pay for accrued sick days that the employee wishes to use for an approved purpose.  *See* Cal. Labor Code § 246.5.

Plaintiff claims that Defendant  violated California Labor Code sections 246  and  246.5 by denying Plaintiff's right to use sick days, and retaliating against Plaintiff for using his protected sick days by terminating his employment. (Doc. 1, Complaint at ¶¶ 42, 43.)  Defendant asserts that Plaintiff's third cause of action for retaliation in violation of Cal. Labor Code §§ 246 and 246.5 fails not only because he cannot put forth substantial evidence demonstrating that his employment was terminated due to illegal animus, but also because there is no private right of action for an alleged violation of those Labor Code sections.  (Doc. 16-1 at 19.)

California Labor Code section 248.5 outlines the "Enforcement of the Article."  The explicit language in subsections (a)(b)(d) and (e) outline the role of the Labor Commissioner or the Attorney

17

General.  Subsection (e) then sets forth explicitly two distinct mechanisms for civil enforcement of the HWHF.  First, it provides that the "Labor Commissioner and the Attorney General may bring a civil action in a court of competent jurisdiction against the employer or other person violating [the HWHF] and, upon prevailing, shall be entitled to collect legal or equitable relief on behalf of the aggrieved as may be appropriate to remedy the violation," which includes injunctive relief, backpay, restitution, liquidated damages, attorneys' fees and costs, and statutory penalties.  Cal. Labor Code § 248.5(e).  Second, the tail end of section 248.5(e) includes a statement that "*any person or entity enforcing this article on behalf of the public as provided for under applicable state law* shall, upon prevailing, be entitled only to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs." *Id.* (Emphasis added).  Accordingly, under these provisions, a civil enforcement action may be brought by the Labor Commissioner, the Attorney General, or a private litigant, so long as the person or entity bringing the action otherwise complies with the requirements set forth in section 248.5(e).

Defendant moves for summary judgment with respect to this claim on the ground that the Healthy Workplaces, Healthy Families Act does not contain a private right of action.  (Doc. 16-1 at 7, 19; Doc. 23 at 9.)  The plain language of section 248.5(e) provides, in relevant part, that an enforcement action by a private litigant can be brought only "under applicable state law," which the Court interprets to mean that it must be brought pursuant to another state law that is not the Healthy Workplaces, Healthy Families Act itself.  *See Diaz v. Rescare Inc.*, No. 4:20-CV-01333 YGR, 2020 WL 6270934, at *3 (N.D. Cal. Oct. 26, 2020); *Titus v. McLane Foodservice, Inc.*, No. 216CV00635KJMEFB, 2016 WL 4797497, at *4 (E.D. Cal. Sept. 14, 2016) (dismissing standalone claim for violations of the Healthy Workplaces, Healthy Families Act without leave to amend "because there is no private right of action to enforce that provision").

Based on the foregoing,  the Court grants summary judgment as to Plaintiff's third cause of action pursuant to the Healthy Workplaces, Healthy Families Act.

### D.    Plaintiff's Fourth Cause of Action for Violation of Labor Code Section 1102.5

Plaintiff's fourth cause of action is for retaliation in violation of California Labor Code § 1102.5.  In general, this statute makes it unlawful for "[a]n employer, or any person acting on behalf of the employer," to retaliate against an employee for either disclosing information regarding a violation

of or noncompliance with a statute, rule, or regulation, or refusing to participate in an activity that would result in such a violation or noncompliance.  Cal. Lab. Code § 1102.5(b)-(c); *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287 (2006) ("Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourag[e] workplace whistle-blowers to report unlawful acts without fearing retaliation.'" (quoted source omitted)).

Defendant asserts that Plaintiff's claim for violation of Labor Code section 1102.5 fails because he cannot demonstrate his employment was terminated due to his disclosure of illegal activity and because Plaintiff cannot establish that he disclosed any illegal activity to a person with authority over him or with authority to investigate, discover, or correct the violation.  (Doc. 16-1 at 18, Doc. 23 at 10, citing Cal. Lab. Code § 1102.5(b).)

Here, Plaintiff claims that he engaged in a protected activity by requesting leave from work and was terminated in retaliation.  (Doc. 18 at 21.)  However, Plaintiff never made a complaint to anyone at Sentinel regarding his leave of absence, and he had no reason to complain because Sentinel granted Plaintiff's request.  (Doc. 16-1 at 18-19.)  Plaintiff fails to show there is a genuine issue of a material fact as to his claim that he engaged in activity protected by Labor Code section 1102.5.  Accordingly, the Court grants the motion for summary judgment as to Plaintiff's fourth cause of action.

### E.    Plaintiff's Fifth Cause of Action for Wrongful Termination in Violation of Public Policy

To establish a prima facie case for wrongful termination in violation of public policy, Plaintiff must show (1) the existence of an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff's harm.  *Yau v. Allen*, 229 Cal. App. 4th 144, 154 (2014).  To show that the termination was substantially motivated by a violation of public policy, the plaintiff must allege conduct that violated a public policy delineated in a constitutional or statutory provision.  *Sequoia Ins. Co. v. Superior Court*, 13 Cal. App. 4th 1472, 1475 (1993) (holding that employer's conduct that is prohibited by a statutory or constitutional provision is a foundational requirement to establish wrongful termination in violation of public policy).  Plaintiff claims that if the claim for CFRA or Labor Code violations survives summary judgment, the wrongful termination claim should also survive.  (Doc. 18

at 22.)  As previously discussed, Plaintiff has adduced relevant evidence to demonstrate that there is a genuine issue of a material fact related to Plaintiff's termination of employment.  Accordingly, the Court denies summary judgment as to Plaintiff's fifth cause of action.

### F.      Plaintiff's Sixth Cause of Action for Intentional Infliction of Emotional Distress

Plaintiff brings a claim against Defendant for intentional infliction of emotional distress (IIED). (Doc. 1, Complaint at ¶¶ 68-70.)  To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress.  *Agarwal v. Johnson*, 25 Cal.3d 932, 946 (1979).  To satisfy the first prong of outrageousness, the conduct must be so extreme that it exceeds all bounds tolerated in a civilized society.  *Nally v. Grace Community Church*, 47 Cal.3d 278, 300 (1988); *Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal.App.3d 222, 231 (1983).

Defendant contends that Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff has not demonstrated that Defendant engaged in outrageous conduct.  In *Janken,* the court found that "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."  *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996).  The court held that "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.  If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination."  *Id.*  Courts have followed the holding in *Janken* and dismissed intentional infliction of emotional distress claims premised on personnel management decisions.  *See e.g.*, *Walker v. Boeing Corp.,* 218 F.Supp.2d 1177, 1190 (C.D. Cal. 2002) ("Terminating an employee for improper or discriminatory reasons, like many adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress."); *see also Helgeson v. Amer. Intern. Group, Inc.,* 44 F.Supp.2d 1091, 1097 (S.D. Cal. 1999); *Bragg v. East Bay Regional Park Dist.,* 2003 WL 23119278, *8-9 (N.D. Cal. Dec. 29, 2003); *but see Jelincic v. Xerox Corp.,* 2004 WL 2217643, *6 (N.D. Cal. Oct. 1, 2004) (limiting the holding in *Janken* to IIED claims against supervisory employees and finding *Janken* inapposite to IIED

claim against an employer).   Plaintiff's IIED claim against Defendant is premised solely on his termination—a clear personnel management decision.   Additionally, Defendant contends that an essential element of an intentional infliction of emotional distress claim is outrageous conduct beyond the bounds of human decency, and a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. (Doc. 16-1 at 20.)  Therefore, Plaintiff has not submitted any evidence demonstrating the existence of a question of fact regarding whether Defendant engaged in outrageous conduct necessary for his claim of intentional infliction of emotional distress.  The Court therefore grants Defendant's motion for summary judgment on this claim.

### G.    Plaintiff's Claim for Punitive Damages

Under each substantive claim in his complaint, Plaintiff alleges that he is entitled to an award of punitive damages.  (See Doc. 1.)  As explained above, the Court grants summary judgment for Defendant on claims three, four and six; accordingly, Plaintiff cannot be entitled to punitive damages based on those claims.

To obtain punitive damages under California law, a plaintiff must meet the high standard of demonstrating by clear and convincing evidence that the defendant has been guilty of "fraud" or "malice."  *Pac. Gas & Elec. Co. v. Superior Court*, 24 Cal. App. 5th 1150, 1158 (Ct. App. 2018), *as modified on denial of reh'g* (July 26, 2018), *review denied* (Oct. 17, 2018) (explaining that the higher burden of proof for punitive damages must be taken into account when ruling on a motion for summary judgment).  "Fraud" means "an intentional misrepresentation, deceit, or concealment of a material fact." Cal. Civ. Code § 3294(c)(3).  "Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  *Id.* § 3294(c)(1). Despicable conduct is conduct that is " ' ". . . so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." ' *See Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009).  The California Court of Appeal has recognized that "[p]unitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or

policy." *Pac. Gas & Elec. Co.*, 24 Cal. App. 5th 1150 at 1170 (finding plaintiffs failed to present sufficient evidence to raise a triable issue of fact as to punitive damages).

Defendant contends that Plaintiff is not entitled to punitive damages because Plaintiff does not assert any allegations of fraud, and Plaintiff cannot offer any evidence—much less clear and convincing evidence—of oppressive or malicious conduct.  (Doc. 16-1 at 21.)  Defendant asserts that Sentinel terminated Plaintiff because it believed he had lied to his supervisor—an indisputably legitimate nondiscriminatory business reason.  (Id.)  The only alleged evidence of wrongful conduct directed toward Defendant was Plaintiff's termination for an alleged improper reason.  This evidence is insufficient to support a finding of despicable conduct because such action is not vile, base, or contemptible.  Nor does this evidence show a conscious and deliberate disregard of Plaintiff's interests. "Conscious disregard of rights is conduct by a defendant who is aware of the probable dangerous consequences of such conduct to plaintiff's interests and [willfully] and deliberately fails to avoid those consequences."  *Smith v. Brown–Forman Distillers Corp.* 196 Cal.App.3d 503, 516 (1987).  Because the claims center on alleged wrongful termination here, punitive damages are not warranted.  The Court therefore grants Defendant's motion for summary judgment on Plaintiff's request for punitive damages.

## V.      Conclusion and Order

Based upon the foregoing, the Court **ORDERS** that Defendant's motion for summary judgment (Doc. 16) is **GRANTED IN PART** as follows:

1.      Summary judgment is **GRANTED** on Plaintiff's claims three, four and six;

2.      Summary judgment is **DENIED** on Plaintiff's claims one, two and five; and

3.      Summary judgment on Plaintiff's request for punitive damages is **GRANTED**.

IT IS SO ORDERED.

Dated:   __**January 31, 2022**__            ____/s/ *Sheila K. Oberto*____
                                             UNITED STATES MAGISTRATE JUDGE